# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of NICKEL.

---

SUBURBAN TOYOTA, LLC,

       Plaintiff-Appellee,

v

KAREN ECKER NICKEL, Conservator of the
ESTATE OF LAURENCE NICKEL,

       Defendant-Appellant.

UNPUBLISHED
November 3, 2015

No. 321081
Alger Circuit Court
Family Division
LC No. 2012-008139-CA

---

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Appellant appeals as of right a judgment entered by the circuit court after a bench trial awarding appellee $15,500 in damages on a claim of unjust enrichment. The judgment arose from a lawsuit filed by appellee to recover an automobile and damages for the use of that vehicle against the appellant as conservator for her husband Laurence Nickel, a protected person. The appellant counter-sued. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Laurence Nickel purchased a vehicle from appellee in late February 2013. Unbeknownst to appellee, Laurence was a protected individual who was not legally able to enter into a contract. Appellant, as conservator of Laurence's estate, instructed Laurence to return the vehicle, which he did a few days after the purchase. However, Laurence later reclaimed the vehicle and appellee returned it to him. Appellant testified that she informed George Varughese, one of appellee's salespersons, of Laurence's status in early March 2013. Varughese testified that appellant never mentioned Laurence's status as a protected individual or gave him any reason to believe that Laurence had been appointed a conservator. Rather, Varughese testified, appellant told him "the car was too expensive, my husband shouldn't have bought it, do you have a cheaper model that we can buy instead." Appellant testified that she requested to speak with a manager numerous times but was never successful.

-1-

Appellant testified that in response to a bill she received for a car payment, she sent a letter to appellee on April 30, 2013, informing it of her status as conservator and of Laurence's inability to contract. The letter was admitted into evidence over objection and included a copy of the probate court's order granting appellant conservatorship. Appellant's testimony was consistent with the letter's contents including her assertion that "they had lost their time to fix the problem, which was to accept this vehicle back" and that there would be no more payments made on the vehicle. On May 9 and 10, 2013, appellee's attorney sent appellant two letters acknowledging that Laurence did not have the legal ability to enter into the purchase contract, and informing appellant that the contract had been rescinded and that appellee was requesting the vehicle be returned, and if the vehicle was not returned by May 15, 2013, appellee would take legal action against the estate. Appellant sent a response letter on June 14, 2013, stating that appellee had been on notice since March 1, 2013, when she informed Varughese of Laurence's protected status, that appellee had actually violated her rights under the Consumer Credit Protection Act,[1] and that appellee should "cease and desist all attempts at collection or repossession of [the vehicle] until this matter is fully investigated by the Michigan Attorney General and other appropriate agencies."[2] In the months subsequent to the June 14 letter, appellee made numerous unsuccessful attempts to repossess the vehicle. Ultimately, the vehicle was returned to appellee in December 2013, but not before it accumulated more than 12,000 miles due to the vehicle's continued use.

The trial court awarded appellee $15,500 in damages as a result of the vehicle's depreciation and the unjust retention and use of the vehicle.

## II. ANALYSIS

### A. UNJUST ENRICHMENT

Appellant first argues that the facts as set forth below cannot give rise to equitable restitution because the retention of the vehicle was not unjust in light of the circumstances. We disagree. "Whether a specific party has been unjustly enriched is generally a question of fact. However, whether a claim for unjust enrichment can be maintained is a question of law, which we review de novo." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006) (internal citations omitted).

The courts of Michigan have "long recognized the equitable right of restitution when a person has been unjustly enriched at the expense of another." *Mich Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 197; 596 NW2d 142 (1999). "Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.'" *Kammer Asphalt Paving Co v East China Twp Schs*, 443 Mich 176, 185-186; 504 NW2d 635 (1993)

---

[1] 15 USC 1671 *et seq.*

[2] Appellant did file complaints with both the Attorney General's office and the Secretary of State, which were both dismissed.

quoting Restatement, Restitution, § 1, p. 12. In order for a plaintiff to succeed on a claim of unjust enrichment, it must prove by a preponderance of the evidence "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps* 273 Mich App at 195.

In this case, the trial court determined that although appellee was not completely without fault, appellant's decision to not return the vehicle after appellee rescinded the purchase contract, coupled with the continued use of the vehicle for over seven months without making any payments on the vehicle, amounted to unjust enrichment. The facts show that appellant indeed received the benefit of use of the vehicle for seven months, and that the vehicle is now worth substantially less as a result of its use. From the time that Laurence purchased the vehicle to the time that it was returned to appellee, the vehicle accumulated roughly 12,000 miles of use. After appellee rescinded the contract and offered to accept return of the vehicle at no cost to Laurence, appellant refused to return the vehicle, allowed Laurence to continue to use it for another seven months, and did not make any payments toward the vehicle. Retention and use of the vehicle amounts to a clear benefit at the expense of appellee.

Further, because appellee realized its error in early May 2013 and made a genuine attempt to reconcile the issue with no cost to Laurence, appellant's long-lasting retention of the vehicle without making any of the payments due was unjust. Although appellant was agitated in her dealings with appellee, once appellee rescinded the contract, appellant's retention of the vehicle on the basis that appellee "had lost their chance" was unreasonable and unjust.

## B. UNCLEAN HANDS

Appellant next argues that appellee's equitable claim for unjust enrichment should be barred due to its unclean hands. Again, we disagree. Whether a specific set of facts gives rise to the doctrine of unclean hands is a question of law that we review de novo. *Attorney General v Ankersen*, 148 Mich App 524, 545; 385 NW2d 658 (1986).

It is a well-established doctrine that "one who seeks the aid of equity must come in with clean hands." *Stachnik v Winkel*, 394 Mich 375, 382; 230 NW2d 529 (1975). In explaining the equitable concept of unclean hands, the United States Supreme Court stated:

> [The doctrine of unclean hands is] a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of the court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. [*Precision Instrument Mfg Co v Auto Maintenance Machinery Co*, 324 US 806, 814; 65 S Ct 993; 89 L Ed 1381 (1945).]

In this case, appellant contends that appellee's actions from the initial sale of the vehicle until May 1, 2013, amounts to bad faith, which gave rise to the inequities for which appellee now seeks recovery. Appellee counters that because the trial court did not compensate it for any inequities from the period of sale until May 1, 2013, appellant must allege some action by appellee after that date which amounts to unclean hands.

The only basis in this record for a finding of unclean hands by appellant is Varughese's allegedly repeated disregard of Laurence's protected status even after appellant made him orally aware of the fact numerous times.[3] The first written notice to appellee with proof of the conservatorship was not sent until April 30, 2013. In response, appellee sent a letter 10 days afterwards in which it rescinded the contract and requested return of the vehicle. In awarding damages, the court specifically declined to award depreciation for any time prior to June 1, 2013, which was when the court found that the unreasonable and unjust retention of the vehicle occurred. Appellant's statement, that she received no relief for the period before June 1, therefore, is inaccurate. *Precision Instrument* made clear the rule that bad faith can only give rise to the doctrine of unclean hands if the bad faith is "relative to the matter in which [the appellee] seeks relief." *Id*. The trial court made clear that the basis for recovery was the refusal to return the vehicle after the rescission letter. As the trial court explained, appellee's response to the April 30, 2013 letter was appropriate and entirely reasonable, and it was appellant's actions after appellee rescinded the contract and asked that the vehicle be returned that were unreasonable.

Affirmed.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan

---

[3] Again, Varughese denied that he was made aware of Laurence's status prior to the letter sent on April 30, 2013, and the trial court acknowledged "[t]here's some doubt in the Court's mind as to who is the more credible relative to when did that [sic] happen."

-4-